UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NEW HAMPSHIRE INDEMNITY COMPANY,
INC.,

        Plaintiff,                         CASE NO.: 3:05-CV-1280-J-12MCR

vs.

DONNA REID, as Personal Representative
of the Estate of Jonathan Merlino,
deceased, HELEN KEARNS, as Personal
Representative of the Estate of Eric Scott
Kearns, deceased, JOHN P. MERLINO,
JEFFREY BRUCE ANDERSON, JR., and
JUAN QUILES, III,

        Defendants,
_____/

**OPINION AND ORDER**

This case comes before the Court on Plaintiff's Motion for Summary Judgment (Doc.72) requesting a determination on its Complaint for Declaratory Relief (Doc.1) that Jeffrey Bruce Anderson, Jr. (Anderson, Jr.) is not an insured under the New Hampshire Indemnity Company, Inc. (NHIC) policy of insurance issued to his father, Jeffrey B. Anderson, Sr. (Anderson, Sr.), as the named insured. Plaintiff asserts that Anderson, Jr. was not a covered resident member of the household of Anderson, Sr. and his wife (Anderson, Jr.'s mother), Christine Anderson (the Andersons), on January 5, 2000, when he was involved in a fatal car accident.[1] Defendants, Donna Reid (Donna Reid Lunsford) and Helen Kearns, the representatives of the estates of the two young

---

[1] The ruling on Plaintiff's Motion for Summary Judgment also resolves the Defendants' Counterclaim contained in Doc. 33, as it seeks a determination by the Court that Anderson, Jr. was a covered resident member of the Andersons' household and therefore insured under the NHIC policy.

men killed in the accident, filed a memorandum in opposition to the motion for summary judgment (Doc.73).  These two Defendants obtained a Final Judgment (Doc.73, Exh.4) against Jeffrey Bruce Anderson, Jr. and Juan Quiles, III, in the amount of $3,000,000.00 each.  That Final Judgment also awarded John P. Merlino $500,000.00 against Jeffrey Bruce Anderson, Jr. and Juan Quiles, III. Following oral argument by the parties and after considering the facts, evidence, and law applicable to this matter, the Court will grant Plaintiff's Motion for Summary Judgment for the reasons set forth below.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of a material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The burden is on the moving party to meet the standard set forth in Rule 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  In the Eleventh Circuit, summary judgment should only be granted where the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.*, 709 F.2d 665, 656 (11th Cir. 1983).  An issue of fact is genuine only if a reasonable jury considering the evidence presented could find for the non-moving party. Material facts are those which will affect the outcome of the trial under governing law. "[T]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *See Raske v. Dugger*, 819 F.Supp. 1046, 1052 (M.D.Fla.1993) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

NHIC issued a personal automobile policy to Anderson, Sr., with effective dates from April

9, 1999 to April 9, 2000.[2] Part A of the policy provides coverage for the "Insured," defined as "You or any "family member" for the ownership, maintenance or use of any auto or "trailer." The policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." The policy does not define the term "resident."

Plaintiff contends that Anderson, Jr., was not a resident of the Andersons' household at the time of the accident on January 5, 2000, and therefore was not insured under the NHIC policy. Defendants contend that Anderson, Jr. was a resident of both a duplex on Braddock Lane, as well as the Andersons' home on Belvedere Lane, and therefore was insured under the NHIC policy at the time of the accident.

The construction and effect of a written contract are matters of law to be determined by the Court. *See Lazzara Oil Co. v. Columbia Cas. Co.*, 683 F.Supp. 777 (M.D.Fla.,1988). "Ordinary rules of construction require [the Court], first, to assess the natural or plain meaning of the policy language at issue." *Valiant Ins. Co. v. Evonosky*, 864 F.Supp. 1189, 1191 (M.D.Fla.1994)(*quoting Landress Auto Wrecking Co., Inc. v. United States Fidelity & Guaranty Co.*, 696 F.2d 1290, 1292 (11th Cir.1983)). While the NHIC policy at issue in this case does contain a definition of "family member," it does not define "residency" which is required in order for the policy to provide coverage for such family member.

The issue of residency under an insurance policy is typically a factual matter. However, when the facts are essentially undisputed, the Court may determine whether a family member is a

---

[2] A copy of the policy is attached as an exhibit to Plaintiff's Motion for Summary Judgment (Doc.72) as well as to the Defendants' response (Doc.73).

resident as required for coverage under the policy.  *See State Farm Fire and Casualty Co. v. Nickelson*, 677 So.2d 37, 38 (Fla. 1st DCA 1996); *Kepple v. Aetna Casualty and Surety Co.*, 634 So.2d 220, 221 (Fla. 2nd DCA 1994).

In *General Guarantee Ins. Co. v. Broxsie*, 239 So.2d 595 (Fla. 1st DCA 1970), the Court set forth guidelines for determining residency that have been utilized by many courts in the context of automobile insurance coverage.  The Court also utilizes the *Broxsie* guidelines in determining whether or not Anderson, Jr. was a resident of the Andersons' household at the time of the fatal accident of January 5, 2000.

In  *Broxsie*, the First DCA stated that "[w]hat appears to distinguish a person as a resident or non-resident is that the resident is more than a mere visitor or transient, but lives at a place with additional attachments *of such significance* as to render that person a more or less *consistent part of the community."  Broxsie* at 597 (emphasis added). The *Broxsie* court identified three important considerations in determining residency: 1) close ties of kinship;  2) a fixed dwelling unit; and 3) enjoyment of each part of the living facilities.  *Id.*.

The *Broxsie* also court noted that the residence of a party is a matter of both fact and intention, so it is important to consider the intent of the parties in making a residency determination. *Id*. (citation omitted).  The issue of whether or not a person "lives at a place with no present intention of removing therefrom" is question that must be answered looking at the facts of the particular case.  *Id*. (citations omitted).  The Broxsie court also observed that the term "resident of the same household" is ambiguous as employed by automobile insurance policies and "should be considered in its most inclusive sense."  *Id*. (citation omitted).

The Court has reviewed all the deposition testimony submitted, including that of Anderson,

Jr., Anderson, Sr., and Christine Anderson, as well as the affidavit of Donna Reid Lunsford (Reid Affidavit), and finds that the essential material facts surrounding the issue of residency of Anderson, Jr. at the time of the accident are undisputed.[3] To the extent that facts are disputed, the Court notes them, views them in the light most favorable to the Defendants, and finds that they are not material, in that they would not support a reasonable jury finding in favor of the Defendants. The Court summarizes the facts below.

Anderson, Jr. lived at the Braddock Lane duplex for at least eight months prior to the accident.[4] The duplex and the Andersons' single family home on Belvedere Lane were separate residences on different streets and not a "fixed dwelling unit[5]."

---

[3] Citations to the record for the undisputed facts can be found in Plaintiff's Motion for Summary Judgment (Doc.72), pp. 5-12.

[4] Since approximately age 18, Anderson, Jr. had moved in and out of his parents' home several times before moving to the Braddock duplex in April 1999, and also stayed there after the accident to recuperate from his injuries. Anderson, Jr.'s intent was to live on his own, but various circumstances had him return to live with his parents until he could re-establish his own residence. *See e.g.*, Depo. of Anderson, Jr., at p. 88; Depo. of Christine Anderson, at pp. 29-30.

[5] The Court views the term "fixed dwelling unit" in its most inclusive sense, recognizing that, for the purposes of insurance coverage, Florida court determinations of residency since *Broxsie* have not imposed a hardline rule requiring that the proposed resident actually reside in the same physical dwelling household as the named insureds, that is, Florida courts have found that a person may be a "dual resident" of both the named insured's household and a separate dwelling. However, for the reasons stated in this opinion, the Court finds that the facts in this case are clearly distinguishable from those cases where Florida courts have found residency despite separate dwelling units, and do not support a finding in this case that Anderson, Jr. was a resident of the Andersons' household. *Cf, e.g.*, *Dwelle v. State Farm Mutual Automobile Insurance Company*, 839 So.2d 897 (Fla. 1st DCA 2003)(at time of accident the named insured's son was a full-time college student, physically residing with his parents at his parents' home at the time of the accident, parents were intended sole source of financial support, son had not abandoned his parents' home, and parents claimed son as a dependant on their tax returns); *Seitlin & Co. v. Phoenix Insurance Co.*, 650 So.2d 624 (Fla. 3rd DCA 1994) (holding son, a full-time student, covered under parents' homeowners policy where son treated parents' home as permanent residence, maintained room and possessions at parents' home, and

Anderson, Jr. shared the Braddock Lane duplex with various roommates. Though there was no written lease, the Andersons, who owned the duplex, charged Anderson, Jr. and his roommates $600 per month for the "B" side of the duplex, where they lived. All utilities were the responsibility of Anderson, Jr. and his roommates. The electric bill was in the name of Anderson, Jr., and Anderson, Jr. was responsible for all of his own personal bills, including utilities and groceries.

The record is disputed about whether Anderson, Jr. consistently paid his full share of the rent. For purposes of ruling on Plaintiff's Motion for Summary Judgment, the Court assumes that Anderson, Jr. sometimes paid his full rental share, sometimes made a partial rental payment, and sometimes did not pay anything toward his share, depending on his employment status. The record is undisputed, however, that he was supposed to be paying rent to his parents to live at the Braddock duplex and that he was never threatened with eviction for any partial or non-payment.

His parents only occasionally visited Anderson, Jr. at the Braddock Lane duplex. The frequency of Anderson, Jr.'s visits to his parents' home on Belvedere Lane is disputed, ranging from an estimate of several times a week to sometimes no visits for weeks at time. Again, for purposes of ruling on Plaintiff's Motion for Summary Judgment, the Court assumes that a jury could

---

parents were *sole* financial support.); *Kepple v. Aetna Casualty and Surety Co.*, 634 So.2d 220 (Fla. 2nd DCA 1994) (holding daughter entitled to uninsured motorist coverage as a resident of parents' household where daughter and husband resided in enclosed carport attached to parents' home and had free access to parents' home with no separate utilities, address, or mailbox); *Alava v. Allstate Insurance Co.*, 497 So.2d 1286 (Fla. 3rd DCA 1986) (holding son of divorced parents a resident of both households where son spent significant time in both mother's and father's households and clear intent of parents that son maintain relationship with both parents); *Row v. United States Automobile Association*, 474 So.2d 348 (Fla. 1st DCA 1985)(apartment complex owned by father was considered "family dwelling" for mentally ill son and other siblings, even though son slept in a separate apartment where son relied on father for emotional and financial support, son used father's apartment for everything except sleeping so was no mere visitor or transient, and there was no evidence of father's or son's intent at the time of the accident for son's living arrangements to change.).

find that Anderson, Jr. visited the Andersons' home several times each week.

At the time of the fatal accident, Anderson, Jr. did not have a key to the Andersons' home, did not have a bedroom at the Andersons' home nor would one have been available for his use, and rarely, if ever, spent the night there.[6] Some of his personal items were stored in boxes in the garage. When he visited his parents' home, Anderson, Jr. was permitted to help himself to the contents of the refrigerator and he sometimes dined there with family members. Despite various conflicting statements, the Court also assumes that a jury could find that while he visited his parents' home, he also watched television, used the swimming pool, and sometimes helped with some chores around the house.

The deposition testimony of Anderson, Jr., Anderson, Sr., and Christine Anderson regarding their intent as to the residency of Anderson, Jr. is unanimous and uncontroverted in the record. Anderson, Jr. stated that he considered the Braddock Lane duplex his home and that even before moving there he only stayed at his parents' Belvedere Lane home temporarily pending his ability to establish his home elsewhere.[7] *See e.g.* Depo. of Anderson, Jr. at pp. 36, ll 8-10, pp.71-72 and 88.

---

[6] In their response to Plaintiff's Motion for Summary Judgment (Doc.73), the Defendants assert that Donna Reid Lunsford's affidavit supports the fact that Anderson, Jr. sometimes slept in a recreational vehicle that was parked at the Andersons' Belvedere Lane home. The Court finds no such statement in her affidavit. Christine Anderson stated that she was not aware of Anderson, Jr. ever sleeping in the recreational vehicle. Depo. of Christine Anderson at p. 78.

[7] The Defendants cite as evidence that Anderson, Jr. was a resident of the Andersons' Belvedere Lane address the ambulance report for Anderson, Jr. on the date of the fatal accident which shows Belvedere Lane as his address. Doc. 73, Exh. 9. The Court finds that this document is not probative of Anderson, Jr.'s residency because there is no indication of who provided the information contained in the report. Moreover, the report states that Anderson, Jr. was ejected from his vehicle, sustained multiple injuries, and his verbal ability was "confused."

When Anderson, Jr. moved into the Braddock Lane duplex in April of 1999, and throughout the course of his residency at the duplex, Anderson, Sr. offered no financial support. Christine Anderson, his mother, sometimes on a weekly basis, would give or loan Anderson, Jr." ten or twenty bucks here and there." Christine Anderson also never threatened to evict Anderson, Jr. for partial or nonpayment of rent.[8] The Andersons expected Anderson, Jr. to support himself and had no intention of having Anderson, Jr. return to their household on a permanent basis.[9] *See e.g.* Depo. of Christine Anderson at pp.29-30; Depo. of Anderson, Sr. at pp. 11, 24 and 31.

In addition, Anderson, Jr. did not have keys to any of the Andersons' vehicles.[10] Anderson, Sr. did not intend that Anderson, Jr. be insured under the NHIC policy.[11] *See e.g.* Depo. of Christine Anderson at pp.26 and 28; Depo. of Anderson, Sr. at p. 23. When Anderson, Jr. moved into the Braddock duplex in April 1999,[12] he maintained his own insurance policy on his own vehicle, an

---

[8] She also provided money to post $10,000 bail when Anderson, Jr. was arrested in September 1999.

[9] In fact, according to Donna Reid Lunsford, Christine Anderson said that she was tired of supporting her son. Reid Affidavit.

[10] Donna Reid Lunsford claims to have seen Anderson, Jr. drive one of the Andersons' vehicles and Anderson, Jr. stated he drove his mother's vehicle approximately three times. Depo. of Anderson, Jr. at p.33. Assuming this is true, such evidence is insufficient, in light of the record before the Court to permit a jury to find that Anderson, Jr. was a resident of the Andersons' household.

[11] In fact, the first time Anderson, Jr. moved out of his parents' home when he was approximately 18 years old, Christine Anderson filled out paperwork with their automobile insurance company at that time to remove him from the policy because he was no longer living in their household. Depo. of Christine Anderson at pp.28 and 65.

[12] The NHIC policy became effective April 9, 1999, the same month that Anderson, Jr. moved into the duplex.

Acura.[13] Moreover, the Andersons did not claim Anderson, Jr. as a dependant on their 1999 or 2000 Federal Tax Returns.

This Court is of the opinion that the nature of Anderson, Jr.'s visits to his parents' home and other contacts with them evidence strong bonds of kinship, but do not rise to the level of enjoyment of each part of the living facilities as contemplated by the *Broxsie* and other courts when determining residency in the insurance context. Likewise, the financial and other support that the Andersons provided does not rise to the level of sole support or dependency to establish that he or they had the present intention that he reside in their Belvedere home, but rather evidences the contrary intent by all parties that he maintain a separate residence apart from his parents at the Braddock Lane duplex. The financial and other support[14] he received from his parents in fact enabled Anderson, Jr. to continue to maintain his residence outside his parents' home and not become a consistent part of the community of the Andersons' Belvedere Lane home. Viewing all of the evidence in the light most favorable to the Defendants, the Court concludes that the financial support and contacts are best characterized as evidencing strong bonds of kinship, rather than any present intent to reside with his parents. The Court is of the opinion that on the record before the Court, a reasonable jury could only reach the conclusion that Anderson, Jr. was a visitor or transient with regard to the Andersons' household, and that he did not have significant additional attachments which would render him a consistent part of the household community as contemplated by *Broxsie*. Anderson, Jr. had not resided there with "no present intention of removing therefrom" (Broxsie at

---

[13] Anderson subsequently relinquished possession of the Acura for failure to make his car payments, and his insurance lapsed for non-payment. This occurred before the accident.

[14] In addition to the support the Court has described, such support could also include Christine Anderson doing Anderson, Jr.'s laundry, as claimed by Donna Reid Lunsford and disputed by other testimony, but that would not change the Court's conclusion.

597) for at least eight months prior to the accident, and neither he nor his parents had any present intent that he return to the Anderson household at the time of the accident.

Therefore, NHIC is entitled to a determination as a matter of law that Anderson, Jr. was not a resident of the named insured's household at the time of the January 5, 2000 accident, and as a result is not covered under the NHIC policy; and further, based on the foregoing, the Court will grant summary judgment as a matter of law in favor of the Plaintiff. Accordingly, it is

**ORDERED AND ADJUDGED**:

1. That Plaintiff's Motion for Summary Judgment (Doc.72) is granted and the Court determines that Jeffrey Bruce Anderson, Jr. was not a resident of the named insured's household at the time of the January 5, 2000 accident, and therefore is not covered under the NHIC policy; and

2. That entry of Final Judgment is hereby deferred pending Plaintiff's written notification to the Court by February 26, 2007, regarding the status and proposed disposition of the case regarding the remaining three Defendants who have not appeared in this case: John P. Merlino, Jeffrey Bruce Anderson, Jr., and Juan Quiles, III .

**DONE AND ORDERED** this 7th day of February 2007.

_Howell W. Melton_
HOWELL W. MELTON
United States District Judge

Copies to:
Counsel of Record